Erik A. Christiansen, USB #7372
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:  801.532.1234
Facsimile:  801.536.6111
EChristiansen@parsonsbehle.com
ecf@parsonsbehle.com

*Attorneys for Defendants*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| E.P. and S.A., on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Aylo Global Entertainment, Inc.; Aylo USA Incorporated; Aylo Holdings Corp.; Aylo Holdings S.A.R.L.; Aylo Freesites Ltd.; 9219-1568 Quebec, Inc.; and Does 1-100,<br><br>Defendant. | **DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED PROPOSED CLASS ACTION COMPLAINT**<br><br>Case No. 2:25-cv-1141-DBB-DBP<br><br>Judge: Hon. David Barlow<br><br>Magistrate Judge: Hon. Dustin B. Pead |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................ 1

II.    PLAINTIFFS' CLAIMS AND CLASS ALLEGATIONS ................................... 3

    A.   Factual Allegations ................................................................... 3

    B.   Proposed Classes........................................................................ 3

III.   LEGAL STANDARD.......................................................................... 5

    A.   The Court's Authority to Strike Class Allegations at the
Pleading Stage............................................................................ 5

    B.   Rule 23's Requirements for Class Certification ........................... 6

IV.   ARGUMENT.................................................................................. 8

    A.   Plaintiffs' Proposed Class Definitions Are Fatally Overbroad
Because They Include Uninjured Persons. ................................... 8

    B.   Plaintiffs Cannot Establish Commonality or Predominance. ........ 11

    C.   A Nationwide Class Further Defeats Predominance Because
Plaintiffs Assert Claims Under Multiple States' Laws................... 15

    D.   A Class Action Is Not the Superior Method of Adjudicating
These Claims............................................................................. 18

    E.   Named Plaintiffs Are Necessarily Atypical of the Classes
They Seek to Represent. .......................................................... 20

    F.   Named Plaintiffs Are Necessarily Inadequate Because They
Chose to Proceed Pseudonymously. ......................................... 21

    G.   Plaintiffs' Non-Utah Statutory Claims and Non-Utah Class
Allegations Should Be Stricken. ............................................... 22

      1.   Plaintiffs Lack Standing to Represent the California and New York
Subclasses. ............................................................................. 22

      2.   The Court Lacks Personal Jurisdiction Over Defendants as to Class
Claims Asserted by Non-Utah Plaintiffs..................................... 23

V.    CONCLUSION............................................................................... 24

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ..................................................................................17

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................... *passim*

*Barrett v. Vivint, Inc.*,
   No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231 (D. Utah May 20, 2020)
   (Barlow, J.).................................................................................................................6

*Brownman v. Kendall Patient Recovery U.S., LLC*,
   No. CV 121-112, 2022 WL 4451339 (S.D. Ga. Sept. 23, 2022)................................9

*Candelaria v. Conopco, Inc.*,
   No. 21-cv-06760 (NCM) (TAM), 2025 WL 1826454 (E.D.N.Y. July 2, 2025) ..............13, 14

*CGC Holding Co., LLC v. Broad & Cassel*,
   773 F.3d 1076 (10th Cir. 2014) ..............................................................................18

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)...................................................................................................11

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)...................................................................................................9

*Colley v. Procter & Gamble Co.*,
   No. 1:16-cv-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ..............................11

*Doe (1) v. University of Kansas Hospital Authority*,
   No. 2:25-cv-02200-HLT-TJJ, 2025 WL 1634958 (D. Kan. 2025)...........................21

*Doe v. Compact Info. Sys.*,
   No. 3:13-CV-5013-M, 2015 WL 11022761 (N.D. Tex. Jan. 26, 2015) ...................21

*Doe v. NFL Enters.*,
   No. C 17-00496 WHA, 2017 WL 697420 (N.D. Cal. Feb. 22, 2017)......................21

*East Tex. Motor Freight System, Inc. v. Rodriguez*,
   431 U.S. 395 (1977)..................................................................................................22

*Elson v. Black*,
   56 F.4th 1002 (5th Cir. 2023) ....................................................................................6

4906-2962-7053.v2

*Faulhaber v. Petzl Am., Inc.*,
656 F. Supp. 3d 1257 (D. Colo. 2023)..................................................................9, 18

*In re Ford Super Duty Roof-Crush Litig.*,
No. 2:22-cv-12079, 2024 WL 6895710 (E.D. Mich. Sept. 30, 2024) ....................................23

*In re Fosamax Prods. Liab. Litig.*,
248 F.R.D. 389 (S.D.N.Y. 2008) ................................................................14

*Francis v. APEX USA, Inc.*,
406 F. Supp. 3d 1208 (W.D. Okla. 2019) ..................................................6

*Gen'l Tel. Co. of S.W. v. Falcon*,
457 U.S. 147 (1982)................................................................................6

*Gilbert v. U.S. Olympic Comm.*,
423 F. Supp. 3d 1112 (D. Colo. 2019).......................................................9

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
98 N.Y.2d 314 (2002) ............................................................................23

*J.B. ex rel. Hart v. Valdez*,
186 F.3d 1280 (10th Cir. 1999) ...............................................................8

*House v. Armour of Am.*,
886 P.2d 542 (Utah Ct. App. 1994) .........................................................16

*Johnson v. Riddle*,
No. 2:98-CV-599 TS, 2007 WL 528719 (D. Utah Feb. 15, 2007) .........................17

*Jones v. Lubrizol Advanced Materials, Inc.*,
583 F. Supp. 3d 1045 (N.D. Ohio 2022)...................................................10

*Kohn v. Am. Hous. Found., Inc.*,
178 F.R.D. 536 (D. Colo. 1998) .............................................................19

*Kurczi v. Eli Lilly & Co.*,
160 F.R.D. 667 (N.D. Ohio 1995) ..........................................................19

*Lester v. Abiomed, Inc.*,
No. 1:25 CV 1081, 2026 WL 874051 (N.D. Ohio Mar. 31, 2026)....................13, 16

*Loreto v. Procter & Gamble Co.*,
No. 1:09-cv-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ....................10, 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................8

-iv-

*Microsoft Corp. v. Baker*,
    582 U.S. 23 (2017)...................................................................................................6

*Morris v. Davita Healthcare Partners, Inc.*,
    308 F.R.D. 360 (D. Colo. 2015) ...........................................................................16

*Mosley v. EzriCare LLC*,
    No. 6:23-CV-20-REW, 2024 WL 1342615 (E.D. Ky. Mar. 29, 2024) ..................24

*N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*,
    710 F. Supp. 3d 1090 (D. Utah 2023)...................................................................20

*In re N.D. Cal., Dalkon Shield IUD Products Liab. Litig.*,
    693 F.2d 847 (9th Cir. 1982) ...................................................................13, 15, 16

*In re Pac. Fertility Ctr. Litig.*,
    No. 18-cv-01586-JSC, 2020 WL 3432689 (N.D. Cal. June 23, 2020)...................19

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).............................................................................................17

*Phillips v. J.L. Hudson Co.*,
    79 Mich. App. 425 (1977)....................................................................................16

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ...........................................................................6, 16

*Ramsay v. Frontier, Inc.*,
    No. 19-cv-03544-CMA-NRN, 2020 WL 4557545 (D. Colo. July 30, 2020).........19

*Rasmussen v. Apple Inc.*,
    27 F. Supp. 3d 1027 (N.D. Cal. 2014) ..................................................................10

*Rayware Ltd. v. New Creations Brands*,
    No. 2:23-cv-00355-DBB-DAO, 2024 WL 1771688 (D. Utah Apr. 24, 2024)
    (Barlow, J.)...........................................................................................................24

*Rector v. City & Cnty. of Denver*,
    348 F.3d 935 (10th Cir. 2003) ..............................................................................22

*Saleh v. Barr*,
    801 F. App'x 384 (6th Cir. 2020) ...........................................................................9

*Sec. Sys., Inc. v. Alder Holdings, LLC*,
    421 F. Supp. 3d 1186 (D. Utah 2019)..........................................................7, 16, 18

*Sherman v. Trinity Teen Solutions, Inc.*,
    339 F.R.D. 203 (D. Wyo. 2021) .......................................................................21, 22

-v-

*Smith v. LifeVantage Corp.*,
341 F.R.D. 82 (D. Utah 2022) (Barlow, J.) .........................................................................8, 15

*Soares v. Flowers Foods, Inc.*,
320 F.R.D. 464 (N.D. Cal. 2017).................................................................................................19

*Steering Comm. v. Exxon Mobil Corp.*,
461 F.3d 598 (5th Cir. 2006) ....................................................................................................14

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) .............................................................................................................23

*Tietsworth v. Sears*,
720 F. Supp. 2d 1123 (N.D. Cal. 2010) ..................................................................................10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)...............................................................................................................8, 10

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)........................................................................................................................7

*Utah Div. of Consumer Protection v. Meta Platforms, Inc.*,
No. 230908060, 2024 WL 3741422 (Utah Dist.Ct. July 18, 2024)..................................23, 24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................................14, 22

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
725 F.3d 1213 (10th Cir. 2013) ...............................................................................................7

*Warth v. Seldin*,
422 U.S. 490 (1975)......................................................................................................................9

*Woodard v. Fid. Nat. Title Ins. Co.*,
No. CIV 06–1170 RB/WDS, 2008 WL 5737364, at *3 (D.N.M. Dec. 8, 2008)....................16

**Statutes**

18 U.S.C. § 2255..........................................................................................................................4, 19

**Court Rules**

Fed. R. Civ. P. 23(a) ................................................................................................................6, 11

Fed. R. Civ. P. 23(b) ...........................................................................................................5, 6, 19

Fed. R. Civ. P. 23(c) .....................................................................................................................5

4906-2962-7053.v2

Pursuant to Federal Rules of Civil Procedure 23(c) and 23(d)(1)(D), Defendants Aylo Global Entertainment Inc., Aylo USA Inc., Aylo Holdings USA Corp.,[1] Aylo Holdings S.A.R.L., Aylo Freesites Ltd, and 9219-1568 Quebec Inc. (collectively, "Defendants") hereby move to strike the class allegations in Plaintiffs' First Amended Proposed Class Action Complaint ("FAC") and request oral argument on this motion.

## I.      INTRODUCTION

Plaintiffs E.P. and S.A. assert claims for product liability, negligence, consumer protection, and fraud based on alleged personal injuries that they attribute to exposure to pornography on unnamed platforms when they were minors over a decade ago. *See, e.g.*, FAC ¶¶ 14–15, 141. They also seek to pursue these claims on behalf of a sweeping nationwide Class of other persons "who were exposed to pornography by Defendants' platforms before reaching the age of 18," as well as a Damages Subclass who incurred "expenses for treatment related to their exposure." FAC ¶ 141. Plaintiffs' proposed classes necessarily sweep in individuals who encountered different content, on different platforms, at different times, under varying circumstances, who suffered different alleged injuries, sought different forms of treatment, incurred different expenses, and assert claims arising under the varying laws of all fifty states.

Plaintiffs propose classes that are overbroad and unsuitable for class treatment. For this reason, the Court should strike Plaintiffs' class allegations because it is apparent from the face of the FAC that they could never satisfy the demanding certification requirements of Federal Rule of Civil Procedure 23. Plaintiffs' theories depend on individualized inquiries at every stage: whether and to what extent a putative class member was exposed to content on a Defendant's platform,

---

[1] Plaintiffs misidentified this company as "Aylo Holdings Corp." in the First Amended Complaint, but its proper name is "Aylo Holdings USA Corp."

what content was viewed and on what platform, what warnings or representations were allegedly seen or relied upon, what age verification measures were employed, whether the exposure caused any injury, what expenses were incurred, and what law governs their claims. Those questions cannot be answered through common proof.

For this reason, the Supreme Court has long recognized that personal-injury and product-liability claims requiring individualized proof of exposure, causation, injury, and damages are unsuitable for class treatment. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624–25 (1997). A nationwide class alleging those claims is even less tenable due to variations in state law that would necessitate further individual inquiries, defeat commonality and predominance among the class, exacerbate the impracticalities of the class proceeding, and implicate due process. Because these individualized inquiries are inherent to the claims, no amount of discovery could cure the deficiencies of Plaintiffs' proposed classes, and the Court should excise them from these proceedings.

Plaintiffs' proposed classes—grounded in state-law claims arising from deeply personal and highly individualized allegations of exposure, injury, causation, treatment, and damages— cannot proceed on a classwide basis. Allowing the class allegations to proceed beyond the pleading stage would require costly class discovery and certification briefing, only to reach the same conclusion: certification is unavailable. Rule 23 does not require the Court or the parties to bear that burden. The Court should avoid unnecessary class discovery and certification briefing by striking Plaintiffs' untenable class claims from the FAC now.

II.     **PLAINTIFFS' CLAIMS AND CLASS ALLEGATIONS**

A.  **Factual Allegations**

Plaintiffs assert a range of claims—including product liability, negligence, fraud, consumer protection, and other statutory claims—arising from their alleged exposure to pornographic content as minors and the purported inadequacy of Defendants' age-verification measures. A more detailed account of Plaintiffs' allegations and theories of liability is set forth in Defendants' concurrently filed motion to dismiss.

Collectively, these claims challenge the pornographic content and age verification measures on numerous websites, including Pornhub, RedTube, YouPorn, Tube8, Playboy Digital, Men.com, My Dirty Hobby, Thumbzilla, PornMD, Brazzers, Reality Kings, Digital Playground, Twistys, and Mofos, "among others." FAC ¶ 55. Plaintiffs do not identify to which platform(s) they or the putative class members were exposed or when that exposure allegedly occurred.

B.  **Proposed Classes**

Plaintiffs seek to certify a nationwide class of individuals "who were exposed to pornography by Defendants' platforms before reaching the age of 18," as well as a "Damages Subclass" and four state subclasses. *See* FAC ¶ 141. The proposed Damages Subclass consists of "[a]ll Class members who experienced out of pocket expenses for treatment related to their exposure." *Id.* The state subclasses include Class members who are residents of Utah, Michigan, California, and New York, respectively. *Id.*

Plaintiffs assert their product liability and negligence claims on behalf of all Class members nationwide "under Utah common law, under the Utah Code, and under the common law of all states and other jurisdictions in the United States." FAC ¶ 151; *see also id.* ¶¶ 161, 174, 186, 194. Separately, Plaintiffs assert consumer protection claims under the Utah Consumer Sales Practices Act ("UCSPA"), Michigan Consumer Protection Act ("MCPA"), California Unfair Competition

Law ("UCL"), and New York General Business Law ("GBL") on behalf of the corresponding state subclasses.[2] *See id.* ¶¶ 215, 223, 234, 236. Plaintiffs also allege fraudulent concealment and negligent misrepresentation on behalf of Class members nationwide "under the common law of all states and other jurisdictions in the United States." *Id.* ¶¶ 246, 252. They also bring two statutory claims under Utah Code §§ 78B-3-1001 and 78B-6-2100 on behalf of the Utah Subclass. *Id.* ¶¶ 260, 270. Plaintiffs assert only one claim individually, for violation of 18 U.S.C. § 2255. *See id.* ¶¶ 207–210.

The FAC defines a Damages Subclass but does not tie that subclass to any specific cause of action. Nonetheless, damages are the primary relief sought under each cause of action ("COA"):

- COA 1: Product Liability – Design Defect, FAC ¶ 157 ("Plaintiffs and the Class ***seek reasonable damages*** against Defendants as manufacturers of the defective products.");

- COA 2: Product Liability – Failure to Warn, FAC ¶ 170 ("Plaintiffs and the Class ***seek reasonable damages*** against Defendants as manufacturers of the defective products.");

- COA 3: Negligence – Design Defects, FAC ¶ 184 ("As a result, Plaintiffs and the Class used and became addicted to Defendants' products, which caused their injuries.");

- COA 4: Negligence – Inadequate Warnings, FAC ¶ 192 ("As a result, Plaintiffs and the Class used and became addicted to Defendants' products, which caused their injuries.");

- COA 5: Negligence, FAC ¶ 205 (same), ¶ 206 ("Plaintiffs and the Class ***are entitled to actual damages*** stemming from the injuries claimed herein.");

- COA 6: Knowingly Engaging Minors in a Sexual Act, 18 U.S.C. § 2255(a) (providing ***damages remedies*** only);

- COA 7: Unfair Competition and Consumer Protection Statutes, FAC ¶ 220 (seeking ***damages***, equitable relief, declaratory relief, and attorneys' fees under UCSPA), ¶ 230 (seeking actual and compensatory ***damages*** under MCPA), ¶ 235 (seeking injunctive relief

---

[2] The FAC further asserts that Plaintiffs intend to allege consumer protection claims under additional state statutes, potentially using different class representatives, further underscoring the unsuitable breadth of their claims. *See* FAC ¶ 213 ("Certain Plaintiffs will, at a future time, assert a cause or causes of action against Defendants for consumer fraud or unfair, deceptive, or abusive trade practices under applicable state law.").

and fees under UCL), ¶ 243 (seeking actual ***damages, statutory damages, and/or treble damages*** under GBL);

- COA 8: Fraudulent Concealment, FAC ¶ 251 ("As a direct and proximate result of Defendants' fraudulent concealment …, Plaintiffs and the Class suffered the injuries and ***damages*** claimed herein.");

- COA 9: Negligent Misrepresentation, FAC ¶ 258 ("As a direct and proximate result of Defendants' negligent misrepresentation …, Plaintiffs and the Class suffered the injuries and ***damages*** claimed herein.");

- COA 10: Distribution of Material Harmful to Minors Without Age Verification, FAC ¶ 268 ("Defendants are liable to Plaintiffs and the Utah Subclass for ***damages*** …"); and

- COA 11: Minors Injured by Pornographic Material, FAC ¶ 276 ("Defendants are liable to Plaintiffs for ***damages, including actual damages and punitive damages*** …").

Plaintiffs also do not identify the subsection of Rule 23(b) under which they seek to certify the classes. However, given their repeated emphasis on claimed damages and allegations that common questions "predominate," Rule 23(b)(3) applies. *See* FAC ¶ 144. Plaintiffs do not describe any particular injunctive relief they seek.

## III.    LEGAL STANDARD

### A.  The Court's Authority to Strike Class Allegations at the Pleading Stage

Federal Rule of Civil Procedure 23(c) governs class certification orders. Under Rule 23(c)(1)(A), "the court must determine by order whether to certify the action as a class action" at an "early practicable time" after suit is filed.

Under Rule 23(d)(1)(D), "the court may issue orders that . . . require the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Moving to strike class claims under Rule 23 before the plaintiff has moved to certify the class—or even before discovery—is proper under Rule 23 where "the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *Gen'l Tel. Co. of S.W. v.*

*Falcon*, 457 U.S. 147, 160 (1982); *see also Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *8 (D. Utah May 20, 2020) (Barlow, J.) ("The class certification procedural joinder device governed by Rule 23 may be employed on the pleadings or before discovery.").

Courts routinely strike class claims when the complaint itself demonstrates that the requirements for maintaining a class action cannot be met and where discovery would not alter the central defect in the class claim. *See, e.g.*, *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023) (district courts are permitted to make such determinations on the pleadings "when it is apparent from the complaint that a class action cannot be maintained."). As a result, a motion to strike is appropriate when "the predominance of individual issues over questions common to the proposed class precludes certification of the class." 1 McLaughlin on Class Actions § 3:4 (20th ed. 2023).

"An order striking class allegations is functionally equivalent to an order denying class certification." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017). Thus, a court assessing a putative class, even at the pleading stage, must conduct a "rigorous analysis" of Rule 23's prerequisites. *Elson*, 56 F.4th at 1006 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

### B.  Rule 23's Requirements for Class Certification

Plaintiffs seeking to advance class claims must satisfy all four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one subsection of Rule 23(b). *See* Fed. R. Civ. P. 23. Plaintiffs seeking monetary recovery must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Rule 23(a)(2)'s 'commonality' requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class 'predominate over' other questions." *Amchem*, 521 U.S. at 609. The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "[P]redominance may be destroyed if individualized issues will overwhelm those questions common to the class." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).

"[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member.'" *Id.*

In assessing whether individualized issues predominate, "the Court must determine whether the members of the class seek a remedy to a common legal grievance and whether the common questions of law and fact central to the litigation are common to all class members." *Sec. Sys., Inc. v. Alder Holdings, LLC*, 421 F. Supp. 3d 1186, 1196 (D. Utah 2019) (citations omitted). "Class wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject to only individualized proof." *Id.* Rule 23(b)(3)'s predominance requirement is particularly important in cases that "generally involve highly individualized claims or require an individualized plaintiff-by-plaintiff determination of monetary damages." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1298 (10th Cir. 1999) (Briscoe, J., concurring in part).

## IV.    ARGUMENT

Plaintiffs' claims are inherently inappropriate for class treatment because they are "likely to present 'significant questions, not only of damages but of liability and defenses of liability . . . affecting the [individual class members] in different ways.'" *Amchem*, 521 U.S. at 624–25 (quoting Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment). The individualized issues necessary to try Plaintiffs' putative class claims inescapably pervade every aspect of the Rule 23 analysis and will inevitably (and incurably) preclude certification. The Court should strike Plaintiffs' class allegations from the FAC.

### A. Plaintiffs' Proposed Class Definitions Are Fatally Overbroad Because They Include Uninjured Persons.

As a preliminary matter, Plaintiffs' fatally overbroad class definitions preclude certification here because they include uninjured class members. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Tyson Foods*, 577 U.S. at 466 (Roberts, C.J., concurring)); *see also Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 95 n.96 (D. Utah 2022) ("[U]ninjured individuals cannot recover in a class action.") (Barlow, J.).

Article III standing requires "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). For claims seeking monetary damages, "mere risk of future harm, standing alone, cannot qualify as a concrete harm." *TransUnion*, 594 U.S. at 436. Standing must be resolved at the "threshold" in "every federal case," as it goes to "the power of the court to entertain the suit" and a litigant's entitlement "to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Here, the "Class" is defined as all individuals across the country who have ever been exposed to pornography on Defendants' platforms at any point in time before reaching the age of 18. *See* FAC ¶ 141. That definition necessarily includes individuals who have experienced no injury at all. Plaintiffs' separate "Damages Subclass" confirms as much: it carves out only those class members who incurred out-of-pocket expenses for "treatment" related to their underage exposure, thereby conceding that the broader Class includes people who were not injured. Those class members' mere exposure, without injury, is not enough to constitute the concrete, particularized injury required to confer Article III standing. *See generally Saleh v. Barr*, 801 F. App'x 384, 392 (6th Cir. 2020) ("mere exposure to a vague risk of possible harm, without more, is insufficient for Article III standing"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (risk of "future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'"); *Brownman v. Kendall Patient Recovery U.S., LLC*, No. CV 121-112, 2022 WL 4451339, at *4 (S.D. Ga. Sept. 23, 2022) ("Article III requires more than a claim of exposure …."); *see also Amchem*, 521 U.S. at 624 (recognizing that exposure-based class definitions are inherently problematic).

Courts routinely strike class allegations where, as here, the class definitions include uninjured putative class members who lack standing. *See, e.g.*, *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1273 (D. Colo. 2023) (striking class allegations where class definitions did "not distinguish between potential class members who have been injured and those who have not" as overbroad and not ascertainable); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1155 (D. Colo. 2019) (striking proposed damages class as overbroad where it "include[d] putative class members who were not damaged"); *Jones v. Lubrizol Advanced Materials, Inc.*, 583 F. Supp. 3d 1045, 1056 (N.D. Ohio 2022) (granting motion to strike class allegations where "Plaintiffs'

proposed class definitions appear highly likely to include a large number of people . . . that . . . lack standing."); *Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 WL 6055401, at *4 (S.D. Ohio Nov. 15, 2013) (granting motion to strike based on lack of standing of putative class members); *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1046 (N.D. Cal. 2014) (granting a motion to strike because "the [class] definition is overbroad as it includes within the class individuals who have not experienced any issue or defect"); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146–47 (N.D. Cal. 2010) (granting motion to strike class action allegations when the proposed class definition "include[s] members who have not experienced any problems with" the allegedly defective product). The same result should follow here. The Court should strike the Class because the class definition is untethered to any injury at all; membership turns only on alleged exposure before age eighteen.

Nor can Plaintiffs avoid this problem by recharacterizing their class claims as seeking equitable or injunctive relief. Plaintiffs' class allegations are plainly directed at obtaining monetary recovery—indeed, every cause of action in the FAC seeks damages as the primary remedy. *See supra* Section II.B. Plaintiffs have not identified any specific injunctive relief sought on behalf of the Class, and the FAC does not plead facts supporting Rule 23(b)(2) certification. Because this is a damages class under Rule 23(b)(3), every class member must independently demonstrate Article III standing, including a concrete injury-in-fact. *See TransUnion*, 594 U.S. at 431 ("[E]very class member must have Article III standing in order to recover individual damages.").

Moreover, even if Plaintiffs did seek certification under Rule 23(b)(2), their claims would fail because Plaintiffs lack standing to pursue injunctive relief. As explained further in Defendants' Motion to Dismiss, Plaintiffs themselves are no longer minors, and thus cannot plausibly allege a real and immediate threat that they will again be subjected to the same alleged conduct (exposure

to pornographic content as minors on Defendants' platforms) in the same manner. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (plaintiffs seeking injunctions must show they are "likely to suffer future injury"; the mere fact of past injury does not establish the required likelihood of future harm). Plaintiffs thus lack standing to seek forward-looking injunctive relief on behalf of current minors.

Each of Plaintiffs' proposed classes contain uninjured class members and thus cannot be certified. This alone supports striking the class allegations at the pleading stage.

### B.  Plaintiffs Cannot Establish Commonality or Predominance.

Plaintiffs' class allegations also fail because individualized issues as to liability, causation, and damages will inevitably predominate over any common questions. Even if Plaintiffs could ultimately satisfy the commonality requirement of Rule 23(a) (they cannot), no amount of discovery would resolve the insurmountable hurdles they face from Rule 23(b)'s even more stringent requirement that common issues predominate. Rule 23(b)(3) is designed to "cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615 (cleaned up). But "[t]hose economies are lost" when individual questions pervade the litigation. *See Colley v. Procter & Gamble Co.*, No. 1:16-cv-918, 2016 WL 5791658, at *11 (S.D. Ohio Oct. 4, 2016). In *Amchem*, the Supreme Court reversed the certification of a sprawling class of individuals exposed to asbestos products, holding that the differences in the nature and extent of injuries across class members and the range of individual damages created predominance problems so severe that class treatment was inappropriate. *Id.* at 622–25. Similarly here, the putative class members were exposed to different content, on different platforms, with different age verification measures, at different points in time across a long span of years. They experienced different alleged injuries,

sought different treatment, and incurred different alleged damages. If anything, the individualized issues here are more pronounced than in *Amchem*, because Plaintiffs do not even identify which platforms they or the putative class members used, let alone what content was viewed. These disparate issues make class treatment impossible.

The issue of liability—even under just Utah law—would require numerous individualized inquiries that cannot be resolved on a classwide basis. To prove their claims, Plaintiffs would need individualized proof of: (1) exposure, including what specific content each person viewed; on which platform, and when; (2) age and platform practices, including whether the person was a minor at the time and what age-verification or warning measures were present; (3) reliance and causation, including what representations, omissions, or warnings the person saw or relied upon and whether the alleged exposure caused injury; (4) damages, including whether treatment was sought, what treatment was obtained, and what out-of-pocket expenses were incurred; and (5) plaintiff-specific defenses including statute of limitations, comparative fault, reliance, and causation defenses. These are not peripheral issues. Plaintiffs' own pleading confirms these are core questions to their claims. In identifying the supposedly "common" questions, the FAC includes whether Defendants "persuaded, induced, or enticed minors to engage in sexually explicit conduct," and whether, "in what amount, the Class suffered damages from injuries sustained by Defendants' conduct." FAC ¶ 144(j), (k). These questions involve individualized inquiries that overwhelm any purported common issues.[3]

---

[3] Plaintiffs allege that "Utah's substantive laws may be constitutionally applied to the claims of Plaintiffs and the [nationwide] Class …." FAC ¶ 35. Nonetheless, apparently recognizing that statement to be incorrect, Plaintiffs also assert their claims under the laws of all jurisdictions within the United States. As discussed *infra* Section IV.E, application of Utah law to the nationwide Class, or to any non-Utah residents, is improper.

This conclusion is unsurprising because Plaintiffs chose to frame this case as a personal injury and product defect action. The Supreme Court has consistently recognized that such claims are inherently unsuited for class treatment because they are "likely to present 'significant questions, not only of damages but of liability and defenses of liability … affecting the [individual class members] in different ways.'" *Amchem*, 521 U.S. at 625 (quoting Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment). Indeed, "'no federal appellate court has approved a nationwide personal injury [or] product liability … class.'" *Lester v. Abiomed, Inc.*, No. 1:25 CV 1081, 2026 WL 874051, at *7 (N.D. Ohio Mar. 31, 2026) (quoting *Durocher v. NCAA*, No. 1:13-cv-01570-SEB-DML, 2015 WL 1505675, at *10 (S.D. Ind. Mar. 31, 2015) (collecting cases and granting motion to strike personal injury class allegations)); *see also In re N.D. Cal., Dalkon Shield IUD Products Liab. Litig.*, 693 F.2d 847, 853 (9th Cir. 1982) (noting the individual issues present in products liability actions). Those same concerns permeate here.

The individualized causation issues that pervade Plaintiffs' claims are instructive as to why the predominance requirement could never be met. Plaintiffs allege harms such as addiction, compulsive behavior, depression, sexual-health difficulties, and suicidal thoughts. *See* FAC ¶¶ 14–15. Whether and to what extent any such alleged harm was *caused* by exposure to content on Defendants' platforms are necessarily individualized inquiries that cannot be decided classwide. That inquiry necessarily turns on each person's personal history, age, the nature and extent of the content viewed, the timing of the alleged exposure, other pornography exposure, mental health background, sexual history, other traumatic experiences, and other potential contributing causes. Courts have repeatedly held that these individualized causation inquiries defeat class certification. *See, e.g.*, *Candelaria v. Conopco, Inc.*, No. 21-cv-06760 (NCM) (TAM), 2025 WL 1826454, at *7 (E.D.N.Y. July 2, 2025) (noting the "many number of other potentially contributing factors" to

plaintiffs' alleged harm and denying certification); *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 400 n.11 (S.D.N.Y. 2008) ("The inherently individualized nature of the proximate cause inquiry is a major reason why class certification has been denied in nearly every pharmaceutical products liability medical monitoring case to date."); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (affirming denial of class certification where "each individual plaintiff suffered different alleged periods and magnitudes of exposure and suffered different alleged symptoms as a result"). Accordingly, Plaintiffs and "each Proposed Class member would still need an individualized trial to determine whether the alleged [underage exposure] was the proximate cause of their injury, and whether they suffered any loss or damage therefrom." *Candelaria*, 2025 WL 1826454, at *6.

The same defect dooms Plaintiffs' fraud and consumer protection claims. Those claims would require mini trials as to what each person saw, what was allegedly concealed, whether any omission or representation was material to that person, and whether that person relied on it or was affected by it. *See, e.g.*, *Sec. Sys.*, 421 F. Supp. 3d at 1197 (noting the obstacle posed by individualized reliance questions). These issues are particularly unmanageable here because the FAC challenges over a dozen platforms—each with its own content, interface, age-verification protocols, warnings, and terms of use—over a long period of time and across various jurisdictions, during which any alleged representations, warnings, disclosures, and age-verification practices necessarily varied.

Damages likewise cannot be established through common proof. Plaintiffs' own Damages Subclass is defined as persons who incurred out-of-pocket treatment expenses "related to" exposure. FAC ¶ 141. That definition necessarily requires individualized determinations about whether treatment was sought, whether that treatment was related to the alleged underage

exposure, whether the expense was out-of-pocket, and what amount was paid. As a result, damages are effectively part of the liability inquiry itself here. And "even if the individualized damages determinations were conducted in a separate stage of litigation through bifurcation," the Court here would still have to determine damages for untold numbers of class members on an individualized basis. *See Smith*, 341 F.R.D. at 114 (Barlow, J.) (denying certification where plaintiffs failed to show why the "multiple individualized damages determinations … would not overwhelm the common issues").

These individual inquiries are just a small sample of those necessary to prove liability under just one state's law. This alone shows that common answers are impossible to achieve. But as discussed below, Plaintiffs also seek to bring class claims under the "law of all states and other jurisdictions in the United States." FAC ¶¶ 151, 161, 174, 186, 194, 213, 215, 223, 234, 236, 246, 253. Accordingly, the class claims brought under 50 or more laws, create thousands of permutations of individualized issues further exacerbating the impossibility of satisfying the predominance requirement of Rule 23. *See, e.g.*, *Pilgrim*, 660 F.3d at 948–49.

In the end, even if Plaintiffs could identify some questions common to all class members, such questions would be overwhelmed by the thousands of individualized inquiries and mini trials required to advance these claims under Rule 23. Because these individualized inquiries arise from the very nature of Plaintiffs' claims, common questions will never predominate here, and the class allegations should be stricken.

### C.  A Nationwide Class Further Defeats Predominance Because Plaintiffs Assert Claims Under Multiple States' Laws.

Predominance is independently defeated by Plaintiffs' attempt to pursue a nationwide class based on the laws of multiple states.

"In a multi-state class action suit, determining which state's or states' substantive laws will apply to putative class members' claims, as a practical matter, can be the determinative issue for purposes of [a] predominance analysis." *Woodard v. Fid. Nat. Title Ins. Co.*, No. CIV 06–1170 RB/WDS, 2008 WL 5737364, at *3 (D.N.M. Dec. 8, 2008). Differences in each state's substantive law "would require a consideration of individualized proof." *Morris v. Davita Healthcare Partners, Inc.*, 308 F.R.D. 360, 377 (D. Colo. 2015). Even when various states' laws "may not vary greatly," this factor nevertheless "weighs against plaintiff and in favor of" individualized issues predominating. *See Sec. Sys.*, 421 F. Supp. 3d at 1197–98.

Plaintiffs invoke Utah common law and statutes, the common law of "all states and other jurisdictions in the United States," and several different state consumer-protection statutes. FAC ¶¶ 151, 161, 174, 186, 194, 213, 215, 223, 234, 236, 246, 253. That approach is untenable. In a multistate class action, differences in state law can themselves defeat predominance and render class treatment unmanageable. *See, e.g., Pilgrim*, 660 F.3d at 948–49 (collecting cases for the proposition that differences in state laws cut strongly against nationwide classes); *Dalkon Shield*, 693 F.2d at 850 (finding that commonality was not met where the class members spanned 50 jurisdictions that applied different punitive damage standards); *Sec. Sys.*, 421 F. Supp. 3d at 1197–98; *Lester*, 2026 WL 874051, at *6; *Woodard*, 2008 WL 5737364, at *3–4.

Here, those legal variations would affect virtually every element of Plaintiffs' claims. For example, as further demonstrated in the table attached to the Declaration of Erik Christiansen, product liability standards vary dramatically: Utah follows the Restatement (Second) and recognizes strict liability for design defects (*see House v. Armour of Am.*, 886 P.2d 542, 547 (Utah Ct. App. 1994)), while Michigan has abolished strict product liability entirely (*see Phillips v. J.L. Hudson Co.*, 79 Mich. App. 425, 427 (1977)). Fraudulent concealment and negligent

misrepresentation claims similarly diverge, with varying standards for reliance and duties to disclose. *See* Christiansen Decl., Ex. A at pp. 1–2. And statutes of limitations range from two to six years, with different tolling rules for minors across states. *See id.* at pp. 3–4.

Trying these issues for a nationwide class would require the Court to conduct a sprawling choice-of-law analysis and then apply potentially dozens of different legal standards to millions of individualized factual scenarios. *See Johnson v. Riddle*, No. 2:98-CV-599 TS, 2007 WL 528719, at \*5 (D. Utah Feb. 15, 2007) ("Should certification for the proposed nationwide class be granted, this Court, and/or the trier of fact will be required to examine whether Defendants' alleged practices were permitted by the various statutory schemes of each and every state in which a class member resides. … [T]his would present an insuperable obstacle as the memoranda of the parties indicate that thirty to forty different states are implicated here."); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law."). Rule 23 does not permit that.

The proposed nationwide class would require the Court to apply fundamentally different legal frameworks across virtually every element of Plaintiffs' claims—from the threshold question of whether websites qualify as a "product," to the standards for proving causation and reliance, to the available remedies and applicable limitations periods. These fundamental differences require independent legal analyses for class members in each state, rendering classwide adjudication impossible.

To the extent Plaintiffs attempt to apply Utah law to all nationwide class members' claims, that too is improper. It is well-settled that application of Utah law to out-of-state class members is unconstitutional absent a showing that Utah has a "significant contact or significant aggregation

of contacts to the claims" of each class member. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (due process prohibits plaintiffs from applying the forum state's law to the claims of putative class members in other states where the transactions at issue bear "little or no relationship to the forum"). Here, Utah has no relationship to these claims, other than Plaintiff E.P.'s residence here. *See* FAC ¶ 14. None of the Defendants are incorporated or maintain their principal place of business in Utah. *Id.* ¶¶ 16–21. And no out-of-state class members suffered any alleged injury in Utah. Their alleged exposure to content has no connection to Utah whatsoever. As a result, application of Utah law to out-of-state residents' extraterritorial experiences on the platforms of an out-of-state company is unconstitutional.

### D.  A Class Action Is Not the Superior Method of Adjudicating These Claims.

Additionally, for many of the same reasons, Plaintiffs cannot demonstrate that a class action lawsuit is a superior method for resolving their claims. Under Rule 23(b)(3), a class action must be superior to other "available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In the Tenth Circuit, class treatment is "superior" where it will achieve "economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096 (10th Cir. 2014) (quotations omitted). "[A] class action must be better than, not merely as good as, other methods of adjudication." *Sec. Sys.*, 421 F. Supp. 3d at 1198.

As discussed above, Plaintiffs' class claims would necessarily require individualized inquiries and mini trials. Leaving aside the fact that such inquiries would invariably overwhelm common issues, the superiority requirement independently prohibits class treatment because a class trial would not resolve these claims efficiently. Instead, class treatment would merely front-

load certain abstract common questions and then splinter into individualized proceedings on exposure, injury, causation, reliance, damages, defenses, and governing law.

Courts have repeatedly held that class claims fail Rule 23(b)(3)'s "superiority" requirement where the injuries are private, personal, and highly plaintiff-specific. *Faulhaber*, 656 F. Supp. 3d at 1274; *Ramsay v. Frontier, Inc.*, No. 19-cv-03544-CMA-NRN, 2020 WL 4557545, at \*26, \*28 (D. Colo. July 30, 2020) (concluding that where cases were "at core, personal injury [claims]," nothing "suggests that a class action would be a superior mechanism for trying these issues than individual lawsuits brought to seek personal vindication for each victim."); *Soares v. Flowers Foods, Inc.*, 320 F.R.D. 464, 484 (N.D. Cal. 2017) ("Class action treatment is not superior to case-by-case lawsuits because any classwide trial would be derailed by individualized inquiries . . . ."); *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2020 WL 3432689, at \*7 (N.D. Cal. June 23, 2020) ("Given . . . the personal and private nature of the claims, each absent class member has a strong interest in individually prosecuting an action should the member so choose." (citations omitted)); *Kohn v. Am. Hous. Found., Inc.*, 178 F.R.D. 536, 544 (D. Colo. 1998) ("The proliferation of individual issues of causation and harm presents a significant potential for confusion, inefficiency, duplication, splintering of subclasses, and, indeed, individualization of each class member . . . [therefore] a class action is not superior given the circumstances of this case.").

Class members' ability to pursue their individual claims further underscores the lack of superiority of class treatment here. Indeed, Plaintiffs allege substantial personal injuries and seek significant statutory and compensatory damages. *See* Fed. R. Civ. P. 23(b)(3)(A); *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 680 (N.D. Ohio 1995) (class treatment was not a superior method of litigation when "[the] members of the class may have an interest in individually controlling their

-19-

own litigation"). Far from "negative value" claims that would discourage members from finding representation, Plaintiffs and the class assert significant individual damages. Indeed, one of Plaintiffs' individual theories, 18 U.S.C. § 2255, provides for actual damages or liquidated damages in the amount of $150,000, plus punitive damages and attorney's fees. *See* FAC ¶¶ 207–210; 18 U.S.C. § 2255(a). Plaintiffs' own allegations thus undercut their boilerplate claims of Rule 23 compliance, including that the individual actions are "economically impractical." *See* FAC ¶ 147(a).

Nor is there a compelling reason to conduct a class proceeding in this forum. *See* Fed. R. Civ. P. 23(b)(3)(C). The proposed Class necessarily includes members with no connection to Utah because Defendants' platforms are available nationwide, not only to Utah residents.

### E. Named Plaintiffs Are Necessarily Atypical of the Classes They Seek to Represent.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is lacking where the named plaintiffs' claims are "subject to unique defenses" and where the named plaintiffs have different injuries than putative class members. *See N. Brevard Cnty. Hosp. Dist. v. C.R. Bard, Inc.*, 710 F. Supp. 3d 1090, 1103 (D. Utah 2023).

Named Plaintiffs E.P. and S.A. are necessarily atypical of the proposed classes because their claims are subject to unique defenses and arise from materially different circumstances than those of most putative class members. Both Plaintiffs allege exposure occurring more than a decade ago, when they were minors. FAC ¶¶ 14–15. Their claims thus implicate unique statute-of-limitations defenses, including the applicability of the discovery rule, the date on which each Plaintiff's limitations period began to run, and whether equitable tolling applies to their specific

-20-

circumstances. These defenses are inherently plaintiff-specific and would dominate the litigation of the named Plaintiffs' claims in ways unrepresentative of the broader class.

Moreover, the specific injuries alleged by each named Plaintiff are highly individualized. Plaintiff E.P. alleges compulsive pornography use, depression, and suicidal thoughts, and uses prescription medication, while Plaintiff S.A. alleges more general depression and sexual behavior struggles. FAC ¶¶ 14–15. These divergent injury profiles mean that the named Plaintiffs' claims are not typical even of each other, much less of the untold number of putative class members who may have been "exposed" to content on Defendants' platforms and experienced a different range of alleged harms—or no harm at all. Because the named Plaintiffs' claims are subject to unique defenses and arise from circumstances materially different from those of the putative class, they are necessarily atypical, and certification is precluded.

### F. Named Plaintiffs Are Necessarily Inadequate Because They Chose to Proceed Pseudonymously.

Plaintiffs cannot satisfy Rule 23(a)(4)'s adequacy requirement while simultaneously concealing their identities from the putative class they seek to represent. The FAC identifies Plaintiffs solely by initials, and Plaintiffs filed a Motion to Proceed by Pseudonym/Anonymously on May 13, 2026. ECF No. 42.

Courts within the Tenth Circuit and around the country have repeatedly held that anonymity is fundamentally incompatible with the fiduciary obligations of a class representative. *See Sherman v. Trinity Teen Solutions, Inc.*, 339 F.R.D. 203, 204 (D. Wyo. 2021) ("Plaintiff's status as a class action representative requires disclosure of his identity in order to fairly and adequately protect the interests of the class."); *Doe (1) v. University of Kansas Hospital Authority*, No. 2:25-cv-02200-HLT-TJJ, 2025 WL 1634958, at *4 (D. Kan. 2025) ("It is unclear how Plaintiffs would satisfy their burden to show adequacy when they are unknown or how they would

evaluate potential conflicts with other class members."); *Doe v. NFL Enters.*, No. C 17-00496 WHA, 2017 WL 697420, at *2 (N.D. Cal. Feb. 22, 2017) ("class members will also have a right to know the identity of their representative in this litigation"); *Doe v. Compact Info. Sys.*, No. 3:13-CV-5013-M, 2015 WL 11022761, at *6 (N.D. Tex. Jan. 26, 2015) ("by initiating a class action lawsuit for damages, Plaintiff has chosen to bring herself into the public eye. . . . Any unwanted attention or scrutiny comes along with filing a lawsuit, especially as a class representative of a potentially high profile class action.").

Plaintiffs' decision to proceed anonymously is fundamentally irreconcilable with their class claims. Absent class members cannot meaningfully evaluate whether the representative's claims are typical, whether the representative has interests antagonistic to the class, or whether the representative will vigorously prosecute the action. *See, e.g.*, *Sherman*, 339 F.R.D. at 206. "[A]s the class representative, Plaintiff has a fiduciary duty and obligation to vigorously prosecute the interests of the class. . . . In order to do so, the other class members should know who is representing them." *Id.* Plaintiffs' request for anonymity is incompatible with Rule 23(a)(4). The Court should accordingly strike the class claims on this independent basis.

### G. Plaintiffs' Non-Utah Statutory Claims and Non-Utah Class Allegations Should Be Stricken.

In the alternative, in the event the Court does not strike all the class allegations, it should at least strike the New York, California, and Michigan Subclasses, and all out-of-state statutory claims.

1. <u>Plaintiffs Lack Standing to Represent the California and New York Subclasses.</u>

Plaintiffs are residents of Utah and Michigan. FAC ¶¶ 14–15. The California and New York Subclasses, by contrast, consist of residents of California and New York. Because Plaintiffs

-22-

are not members of either of these classes, they cannot represent them. *See East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)); *see also Dukes*, 564 U.S. at 348–49; *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 949 (10th Cir. 2003) ("A prerequisite for certification is that the class representatives be a part of the class and possess the same interest and suffer the same injury as class members."). Because there is no plaintiff to represent these subclasses, they must be stricken.

Plaintiffs also lack standing to bring claims under California's UCL or New York's GBL, as they do not allege any harm to themselves arising in those states. *See Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1209 (2011) (UCL cannot be applied to claims by nonresidents for conduct occurring outside California); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 325 (2002) ("to qualify as a prohibited act under [GBL § 349], the deception of a consumer must occur in New York"); *In re Ford Super Duty Roof-Crush Litig.*, No. 2:22-cv-12079, 2024 WL 6895710, at *5 (E.D. Mich. Sept. 30, 2024) ("Here, the named Plaintiffs do not allege injuries in states other than their own. . . . Accordingly, . . . Plaintiffs do not have standing to bring claims in the 30 unrepresented states."). Nor can Plaintiffs simply amend to add California or New York class representatives, as the Court would lack personal jurisdiction over those claims for the same reasons discussed *infra* Section IV.G.2.

2.  The Court Lacks Personal Jurisdiction Over Defendants as to Class Claims Asserted by Non-Utah Plaintiffs.

Plaintiffs' non-Utah claims, including the UCL, GBL, and MCPA claims, should further be dismissed or stricken because this Court lacks specific personal jurisdiction over Defendants as

to claims brought by non-resident plaintiffs. "Specific jurisdiction exists if (1) the Defendants purposefully availed themselves of the protection of Utah's laws, including by directing activities at the forum; (2) the claim arises out of or relates to these forum-based contacts; and (3) the exercise of personal jurisdiction is fair and reasonable." *Utah Div. of Consumer Protection v. Meta Platforms, Inc.*, No. 230908060, 2024 WL 3741422, at *2 (Utah Dist.Ct. July 18, 2024). "[M]ere operation of a commercial website accessible to users nationally and internationally does not amount to purposeful direction." *Id.* at *3. (citing *Admar Int'l v. Eastrock, LLC*, 18 F.4th 783, 785 (5th Cir. 2021)). Moreover, "in class action lawsuits, the court must at least have personal jurisdiction over the defendant vis-à-vis each named plaintiff." *See Mosley v. EzriCare LLC*, No. 6:23-CV-20-REW, 2024 WL 1342615, at *4 (E.D. Ky. Mar. 29, 2024).

Here, the claims of Plaintiff S.A., the members of the out-of-state Subclasses, and the non-Utah members of the nationwide Class have no connection whatsoever to Utah. Not only have Defendants not purposefully directed activities in Utah, Plaintiff S.A. and the out-of-state class members' claims have no connection whatsoever to any activity in Utah. As such, the exercise of personal jurisdiction over Defendants as to out-of-state claims is improper. *See, e.g.*, *Rayware Ltd. v. New Creations Brands*, No. 2:23-cv-00355-DBB-DAO, 2024 WL 1771688, at *10–13 (D. Utah Apr. 24, 2024) (Barlow, J.) (dismissing case brought by foreign plaintiff against out-of-state defendant because the claims did not "depend upon any activity that occurred in Utah, nor does any harm stemming from the sales of allegedly infringing products occur in Utah").

## V.    CONCLUSION

Plaintiffs' proposed classes are facially defective. The individualized factual and legal inquiries necessary to resolve the classes' claims and damages, including exposure, age, content, platform identification, warnings, reliance, causation, injury, treatment, expenses, governing law,

and plaintiff-specific defenses, overwhelm any conceivable common issue. Plaintiffs' effort to litigate a nationwide personal injury and product liability case under a patchwork of state laws and the fact that the named Plaintiffs are atypical and inadequate given the uniqueness of their experience and desire to proceed pseudonymously compound these defects. No amount of discovery could cure these deficiencies.

Because the Court need not endure years of class discovery and briefing just to "postpone the inevitable conclusion that the putative class cannot be certified," *Loreto*, 2013 WL 6055401, at *3, the Court should strike Plaintiffs' class allegations now under Rule 23(c) and 23(d)(1)(D).

Dated: May 19, 2026                          Respectfully submitted,

                                             /s/ Erik A. Christiansen
                                             Erik A. Christiansen

                                             *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 19, 2026, I filed the foregoing **DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS IN PLAINTIFFS' FIRST AMENDED PROPOSED CLASS ACTION COMPLAINT** via the Court's CM/ECF system, which provided notice of such filing to all counsel of record.

*/s/ Erik A. Christiansen*

Erik A. Christiansen