UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| E.P. and S.A., on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Aylo Global Entertainment, Inc.; Aylo USA Inc.; Aylo Holdings Corp.; Aylo Holdings S.A.R.L.; Aylo Freesites Ltd.; 9219-1568 Quebec, Inc.; and Does 1-100,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [45] DEFENDANTS' MOTION TO DISMISS AND DENYING [44] DEFENDANTS' MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Case No. 2:25-cv-1141-DBB-DBP<br><br>District Judge David Barlow |

Before the court are Defendants Aylo Global Entertainment, Inc., Aylo USA Inc., Aylo Holdings Corp., Aylo Holdings S.A.R.L., Aylo Freesites Ltd., 9219-1568 Quebec, Inc., and Does 1-100's ("Defendants") Motion to Dismiss[1] and Motion to Strike Class Allegations[2] in Plaintiffs E.P. and S.A.'s ("Plaintiffs") Amended Proposed Class Action Complaint ("Amended Complaint").[3] For the reasons stated below, the court grants Defendants' Motion to Dismiss and denies Defendants' Motion to Strike Class Allegations as moot.

[1] Mot. to Dismiss First Am. Proposed Class Action Compl. ("MTD"), ECF No. 45, filed May 19, 2026.
[2] Mot. to Strike Class Allegations in First Am. Proposed Class Action Compl. ("Mot. to Strike"), ECF No. 44, filed May 19, 2026.
[3] First Am. Proposed Class Action Compl. ("Am. Compl."), ECF No. 16, filed Mar. 20, 2026.

## BACKGROUND

### I. Factual Background

#### A. The Parties

Plaintiffs are both adults who were exposed to pornography as minors. Plaintiff E.P., now 23 years old, alleges he was first exposed to "pornography produced or published by Defendants when he was 11 years old."[4] Plaintiff S.A., now 25 years old, alleges he was first exposed to "pornography produced or published by Defendants" when he was 13 years old.[5]

Defendant Aylo Holdings S.A.R.L. is a foreign entity organized under the laws of Luxembourg.[6] "Each of the other Aylo Defendants are indirect wholly owned subsidiaries" of Aylo Holdings S.A.R.L.[7] Plaintiffs allege Aylo Holdings S.A.R..L "directly and, through subsidiary relationships, indirectly owns the platforms that are the subject of this litigation."[8]

Defendant Aylo Holdings USA Corp. is incorporated in Delaware and is the parent company of Defendant Aylo Global Entertainment, Inc.[9] Plaintiffs contend Aylo Holdings USA Corp. "manages the portfolio of the Aylo subsidiary businesses, operates those companies, and owns and controls certain Aylo intellectual properties" including pornography websites.[10] Defendants assert that Aylo Holdings USA Corp. is simply "a holding company for various other Aylo entities."[11]

---

[4] Am. Compl. ¶ 14.
[5] *Id.* ¶ 15.
[6] *Id.* ¶ 19.
[7] Reply to Opposition to Motion to Dismiss ("Reply") Ex. 1 ¶ 20, ECF No. 61, filed July 27, 2026.
[8] Am. Compl. ¶ 19.
[9] *Id.* ¶ 18; MTD 6.
[10] Am. Compl. ¶ 18.
[11] MTD Ex. 2 ¶ 12.

Defendant Aylo Global Entertainment, Inc. is incorporated in Delaware and Plaintiffs contend, upon information and belief, that it is the parent company of Aylo USA Inc.[12] Plaintiffs allege Aylo Global Entertainment, Inc. "systematically targeted internet users in Utah to capture engagement for its platforms, sold products to consumers in Utah, and engaged Utah-based companies as advertisers on its platforms and as customers."[13]

Defendant Aylo USA Inc. is incorporated in Delaware and allegedly "is responsible for managing Aylo Global Entertainment, Inc.'s operations in the United States, including, but not limited to, pay-per view and cable viewing of premium pornographic content."[14]

Defendant Aylo Freesites Ltd. ("Freesites") is incorporated in the Republic of Cyprus and operates the pornographic websites at issue here.[15]

Defendant 9219-1568 Quebec, Inc. is organized and operates under the laws of Canada and "provides services and operational functions," including "content moderation services," to Defendant Aylo Freesites Ltd. and other Aylo companies.[16]

Plaintiffs allege that the Aylo entities are "separate companies in name only."[17]

### B. Applicable History

Websites dedicated entirely to pornographic material first became accessible on the internet in 1995.[18] By 2012, there were an estimated 25 million of these websites and today approximately 25 percent of all internet searches are related to pornography.[19] As pornographic

---

[12] Am. Compl. ¶ 16.
[13] *Id.*
[14] Am. Compl. ¶ 17.
[15] *Id.* ¶ 20.
[16] *Id.* ¶ 21; MTD 7.
[17] Am. Compl. ¶ 26.
[18] *Id.* ¶ 38.
[19] *Id.* ¶¶ 44–45.

content became more accessible, concern about its effects on children arose.[20] In response to these concerns, some states enacted age verification laws that require pornography websites to verify that users are over eighteen years old.[21]

Both Plaintiffs in this case allege that their exposure as children to pornography produced by Defendants or accessed on Defendants' websites caused significant harm to their mental and sexual health.[22] Specifically, Plaintiff E.P. "developed compulsive use of pornography, which aggravated symptoms of depression and led him to consider suicide."[23] As a result, Plaintiff E.P. attends counseling and a church-sponsored 12-step program, and takes prescription medication.[24] Plaintiff S.A. also experienced "symptoms of depression and compulsive consumption of pornography."[25] Plaintiff S.A. receives treatment through group therapy sessions.[26]

Plaintiffs seek to hold Defendants liable for "designing, operating, and marketing its platforms, including deliberately designing entirely ineffective age gates, facilitating minors' access, and engagement-driven features that funnel children to, and keep them on, its platforms."[27]

## II. Procedural Background

On March 20, 2026, Plaintiffs filed their Amended Complaint on behalf of themselves and others similarly situated against Defendants alleging eleven causes of action, (1) products liability for design defect, (2) products liability for failure to warn, (3) negligence for design

[20] *Id.* ¶¶ 42, 50–54.
[21] *Id.* ¶ 7.
[22] *Id.* ¶¶ 14, 15.
[23] *Id.* ¶ 14.
[24] *Id.*
[25] *Id.* ¶ 15.
[26] *Id.*
[27] Opposition to Motion to Dismiss ("Opp'n") 16, ECF No. 57, filed July 6, 2026.

defects, (4) negligence for inadequate warnings, (5) negligence, (6) knowingly engaging minors in a sexual act under 18 U.S.C. § 2255, (7) violation of unfair competition and consumer protection statutes in various states, (8) fraudulent concealment, (9) negligent misrepresentation, (10) distribution of material harmful to minors without age verification under Utah Code §§ 78B-3-1001, *et seq*., and (11) cause of action for minors injured by pornographic material under Utah Code §§ 78B-6-2100, *et seq*.[28] Defendants move to strike the class allegations and dismiss the claims against them.[29]

## STANDARD

Defendants move to dismiss the claims against them under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim.[30] A "plaintiff need only make a prima facie showing of personal jurisdiction to defeat" a 12(b)(2) motion.[31] The court must "resolve all factual disputes in favor of the plaintiff in determining whether plaintiff has made a prima facie showing."[32]

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[33] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished

[28] Am. Compl. ¶¶ 150–277.
[29] *See* Mot. to Stike, MTD.
[30] *See generally* MTD.
[31] *Old Republic Ins. Co. v. Continental Motors, Inc*., 877 F.3d 895, 903 (10th Cir. 2017).
[32] *Id*. (quoting *Benton v. Cameco Corp*., 375 F.3d 1070, 1074 (10th Cir. 2004)).
[33] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (quoting *United States ex rel. Reed v. KeyPoint Gov't Sols*., 923 F.3d 729, 764 (10th Cir. 2019)).
[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[35] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[36]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[37] However, courts may also consider "documents that the complaint incorporates by reference,"[38] "documents attached as exhibits to the complaint,"[39] and "matters of which a court may take judicial notice,"[40] including "facts which are a matter of public record."[41]

## DISCUSSION

Under Tenth Circuit precedent, courts must resolve challenges to personal jurisdiction before addressing arguments related to the merits of the case.[42] Thus, the court first addresses Defendants' personal jurisdiction arguments.

A court must have personal jurisdiction, or "power over the parties before it" to resolve a case.[43] Plaintiffs contend that this court has jurisdiction over Defendants under 18 U.S.C. § 2255, which authorizes nationwide service of process, thus granting nationwide personal jurisdiction if, Plaintiffs argue, defendants have minimum contacts with the United States.[44] Plaintiffs claim

---

[35] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)).
[36] *Iqbal*, 556 U.S. at 679.
[37] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).
[38] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).
[39] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).
[40] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).
[41] *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).
[42] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).
[43] *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017).
[44] Am. Compl. ¶ 33; Opp'n 3.

Defendants have sufficient contacts because "each Defendant transacts business on a systematic and continuous basis in the United States."[45] Plaintiffs also contend jurisdiction exists via Utah's long-arm statute requiring minimum contacts with this forum.[46] Plaintiffs allege Defendants intentionally engaged with Utah residents by conducting business activities and generating revenue in the state, and collecting user data to tailor content to residents.[47] In addition, Plaintiffs allege that as evidence of its business activities in Utah, Defendants "superficially removed access to adult content for Utah residents after Utah implemented age verification laws."[48]

**I. Jurisdiction Under 18 U.S.C. § 2255**

18 U.S.C. § 2255, often referred to as "Masha's law," provides a civil remedy for "[a]ny person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation."[49] In order to assert jurisdiction under this statute, Plaintiffs must first plead a violation of an applicable predicate offense.

Defendants argue that because Plaintiffs fail to "identify the specific Section of Title 18 Defendants allegedly violated or any non-conclusory allegations showing Defendants committed a predicate offense," jurisdiction cannot exist under 18 U.S.C. § 2255.[50] Plaintiffs contend that Defendants "ignore[] the language in the Complaint mirroring the language of several statutes enumerated in 18 U.S.C. § 2255."[51]

---

[45] Am. Compl. ¶ 33.
[46] *Id.* ¶ 32; Opp'n 4–6.
[47] Opp'n 4–5.
[48] *Id.* 5.
[49] 18 U.S.C. § 2255(a).
[50] MTD 31.
[51] Opp'n 27.

Plaintiffs could have more clearly invoked the required predicate offense. However, in reviewing a motion to dismiss, the court "must draw all reasonable inferences in favor of the nonmoving party" and "[a]ll of the plaintiffs' pleadings must be liberally construed."[52] Under this standard, Plaintiffs' pleadings adequately identify the predicate offenses alleged. The question is whether they plausibly state a claim under them.

The Amended Complaint alleges that "Defendants impermissibly caused Plaintiffs to engage in a sexual act despite Plaintiffs' inability to appraise the nature of the conduct or consent to any sexual act" and "Defendants impermissibly caused Plaintiffs to engage in a sexual act while Plaintiffs were between the ages of 12 and 16 years of age."[53] 18 U.S.C. § 2242(2)(A) holds liable someone who "engages in a sexual act with another person if that other person is incapable of appraising the nature of the conduct" and 18 U.S.C. § 2243(a) holds liable someone who "knowingly engages in a sexual act with another person who (1) has attained the age of 12 years but has not attained the age of 16 years; and (2) is at least four years younger than the person so engaging." Both are predicate offenses. Plaintiffs' Amended Complaint also alleges that "Defendants impermissibly used interstate commerce to persuade, induce or entice Plaintiffs, before they had reached the age of 18, to engage in sexual activity."[54] 18 U.S.C. § 2422(b), a predicate offense, states that anyone who, using "means of interstate or foreign commerce," "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense" can be held liable. All three predicate offenses are

---

[52] *Smith v. Cooper*, No. 93-1124, 1993 WL 307650, at *2 (10th Cir. Aug. 9, 1993) (unpublished).
[53] Am. Compl. ¶¶ 208, 209.
[54] *Id.* ¶ 210.

alleged in the Amended Complaint. However, Plaintiffs do not plausibly plead a violation of any of them.

**A. 18 U.S.C. § 2242 and 18 U.S.C. § 2243**

Both of these predicate offenses hold an offender liable for engaging in a "sexual act" with another person. Congress has defined the term "sexual act" within this chapter to require physical contact.[55] Plaintiffs do not allege that Defendants engaged in any form of physical contact with them. As such, Plaintiffs fail to plausibly plead a violation of 18 U.S.C. § 2242 or 18 U.S.C. § 2243.

**B. 18 U.S.C. § 2422**

18 U.S.C. § 2422(b) holds liable individuals who, through "facility or means of interstate commerce" "knowingly persuades, induces, entices, or coerces" a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." Plaintiffs argue that "'[s]exual activity,' as used in the statute, includes physical and nonphysical conduct, and physical and nonphysical contact."[56] Defendants contend that "until 2023, 'sexual activity' under this statute required actual or attempted physical contact by the abuser with the victim."[57]

In 2023, Congress clarified that "[i]n this chapter, the term 'sexual activity for which any person can be charged with a criminal offense' does not require interpersonal physical

---

[55] 18 U.S.C. § 2246 ("the term 'sexual act' means (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.").

[56] Opp'n 28 n.13 (citing *United States v. Jimenez*, 158 F.4th 628, 631 (5th Cir. 2025)).

[57] Reply 12.

contact."[58] Defendants argue that since Plaintiffs allege they viewed pornography and suffered injuries all prior to 2023, physical contact was required under the statute.[59] No binding decision has so held. It is true that prior to 2023, the first circuit court to consider the issue, the Seventh Circuit, held that the statute required physical contact.[60] However, other circuits, including the Fourth and Eleventh Circuits, did not interpret the statute to require interpersonal physical contact even before 2023.[61] The court finds persuasive these latter two decisions, both of which considered and rejected the earlier decision. The text of the statute does not state or suggest that physical contact is required. Neither does the ordinary meaning of "sexual activity" at the relevant time.[62] Therefore, the court does not require it.

Defendants also argue that Plaintiffs' claim "fails because adult website operators have not 'persuade[d], induce[d], entice[d], or coerce[d]' a minor under § 2422(b)."[63] Yet Defendants cite nothing to support this assertion. Plaintiffs, on the other hand, include various allegations that Defendants "enticed Plaintiffs and other minors to view and possess pornography," through marketing, labeling, and tagging pornography with popular children's themes.[64] However, Plaintiffs do not allege that enticing a minor to view or possess pornography is a "sexual activity for which any person can be charged with a criminal offense."[65] Instead, Plaintiffs note that "Chapter 5c of Utah Code, Title 76 is replete with criminal offenses that apply to minors who

---

[58] 18 U.S.C. § 2427.
[59] Reply 12.
[60] *See United States v. Taylor*, 640 F.3d 255, 259–60 (7th Cir. 2011).
[61] *See United States v. Fugit*, 703 F.3d 248, 256 (4th Cir. 2012); *United States v. Dominguez*, 997 F.3d 1121, 1125 (11th Cir. 2021).
[62] *See Fugit*, 703 F.3d at 254–55; *Dominguez*, 997 F.3d at 1124–25.
[63] Reply 12.
[64] Opp'n 28 (citing Am. Compl. ¶¶ 89, 91–94).
[65] 18 U.S.C. § 2422(b).

possess or view pornography"[66] and list three Utah laws that criminalize accessing pornography at school,[67] offering to or actually distributing pornography to another,[68] and possessing pornography with the intent to distribute it to another.[69] Importantly, Plaintiffs fail to explain how enticing a minor to view or possess pornography is in itself also an act of enticing a minor to commit these or other criminal acts. Nor do Plaintiffs explain how Defendants otherwise enticed minors to commit such offenses. Merely listing three Utah laws without analyzing how specific factual allegations in the Amended Complaint plausibly demonstrate each was violated is insufficient. As such, Plaintiffs fail to plead adequately a violation of 18 U.S.C. § 2422 and subsequently fail to plead a predicate offense under 18 U.S.C. § 2255.[70] Thus, Plaintiffs have not met their burden to plead jurisdiction under Masha's Law.

## II. Jurisdiction Under Minimum Contacts

Plaintiffs argue that even if the court "rejects Masha's Law jurisdiction, it should still exercise jurisdiction based on allegations of minimum contacts."[71] Plaintiffs identify the controlling harmful-effects test and re-articulate allegations of Utah contacts found in the Amended Complaint. But Plaintiffs fail to analyze how these contacts satisfy the relevant three-part test. The court cannot accept conclusory statements that the test is met based on cursory cites. More is required from the party that bears the burden.

---

[66] Opp'n 28.
[67] Utah Code § 76-5c-208(2).
[68] Utah Code § 76-5c-205(2)(a)(i).
[69] Utah Code § 76-5c-202(2)(b).
[70] Plaintiffs assert that because the "almost identical" allegations in *Doe #1 v. MG Freesites, LTD*, 676 F.Supp.3d 1136 (N.D. Ala. 2022) were sufficient for the Northern District of Alabama to exercise personal jurisdiction, this court should similarly exercise personal jurisdiction. Opp'n 5. However, in that case the plaintiffs were "victims and survivors of childhood sex trafficking" and asserted jurisdiction under 18 U.S.C. § 2255 via three different predicate offenses than alleged here, specifically 18 U.S.C. §§ 1591, 2252, and 2252A. *Doe #1*, 676 F.Supp.3d at 1142, 1172.
[71] Opp'n 4.

Specific jurisdiction under the minimum contacts test requires "first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities."[72] In addition, the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice."[73] A plaintiff is required to "establish personal jurisdiction over each defendant."[74]

### A. Defendant Aylo Freesites Ltd.

Defendant Aylo Freesites Ltd. is the operator of numerous pornography websites "that are relevant to Plaintiffs' injuries, such as Pornhub, RedTube, YouPorn, and Tube8."[75] Plaintiffs contend that Freesites, as the operator of these platforms, "extensively engaged with a significant number of Utah residents" such that it has sufficient minimum contacts to establish jurisdiction.[76] A website operator must do more than passively maintain a website that can be accessed in the forum state to subject itself to jurisdiction.[77] In suits involving the internet, the Tenth Circuit has applied a harmful-effects test to satisfy the "purposeful direction" requirement.[78] This test requires the plaintiff to allege "the defendant committed (a) an intentional action that was (b)

[72] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).
[73] *Id.* at 1240 (quoting *Dudnikov*, 514 F.3d at 1080).
[74] *Brunson v. Next Gen Drivetrain*, No: 2:25-cv-00734-CMR, 2026 WL 2676688, at *3 (D. Utah Sep. 11, 2026) (unpublished).
[75] Am. Compl. ¶ 20.
[76] *Id.* ¶ 32.
[77] *Shrader*, 633 F.3d at 1241 ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state.").
[78] *See XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1309 (10th Cir. 2024).

expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state."[79]

**1. Intentional Action**

The first inquiry is whether Freesites engaged in "an intentional action."[80] Plaintiffs allege Freesites takes various actions to promote and maintain traffic to their websites. For example, Freesites engages in "substantial programing efforts" to capture and utilize user data to tailor content.[81] Freesites also designs "their platforms strategically" with color schemes, thumbnails, tags, interactive elements, and other features to intrigue users.[82] Plaintiffs additionally allege that Freesites posts marketing material on social media[83] and maintains subscription services and advertising on its websites.[84] None of these actions were happenstance or accidental, but required intentional planning and execution. Thus, the court concludes that these are sufficient intentional acts.[85]

**2. Directed at Utah**

Next, the court examines whether these intentional acts were "expressly aimed" at Utah.[86] If they were, they must be of the nature that plaintiffs' injuries arose out of them. Plaintiffs allege that Freesites engaged with Utah residents "through subscription services, provision of content, recommendations for consumption, collection of personal data, provision of

[79] *Id.* at 1309–10 (internal quotation marks omitted) (quoting *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 841 (10th Cir. 2020)).
[80] *Id.*
[81] Am. Compl. ¶ 78.
[82] *Id.* ¶¶ 74–77.
[83] *Id.* ¶¶ 93–94.
[84] *Id.* ¶¶ 67–68.
[85] *See Silver v. Brown*, 382 F. App'x 723, 730 (10th Cir. 2010) (unpublished) ("the posting of the blog was clearly an intentional act."); *Shrader*, 633 F.3d at 1240 (explaining that an intentional action includes "writing, editing, and publishing an article.")
[86] *XMission, L.C.*, 105 F.4th at 1310.

products and services, and have generally conducted regular business activities in Utah and derived substantial revenue from their presence within this State."[87] Plaintiffs also allege that Defendants "superficially removed access to adult content for Utah residents after Utah implemented age verification laws" and that Defendants' legal challenges to Utah's age verification laws are evidence "of the conduct it aims at Utah."[88] Defendants contend Freesites "did not commit an intentional act specifically directed at Utah."[89]

#### i. Subscriptions

Plaintiffs first allege that Freesites directed action at Utah by offering Utah residents subscription services.[90] However, Defendants submitted an affidavit stating that none of Defendants, including Freesites, "sell subscriptions" in the state of Utah.[91] "Even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit."[92] Since Plaintiffs have not provided evidence that Freesites sells subscriptions in Utah, Defendants' "affidavits carry the issue."[93]

#### ii. Provision of Content

Second, Plaintiffs allege that Freesites directed actions at Utah through the provision of content.[94] However, a defendant who "simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and

---

[87] Am. Compl. ¶ 32.
[88] Opp'n 5.
[89] MTD 4.
[90] Am. Compl. ¶ 32.
[91] Reply Ex. 1 ¶ 9.
[92] *Shrader*, 633 F.3d at 1248.
[93] *Id.*
[94] Am. Compl. ¶ 32.

received."[95] Without more, maintaining a website with content accessible in the applicable forum is not sufficient to confer personal jurisdiction.[96]

#### iii. Collecting Data and Making Recommendations

Third, Plaintiffs allege Defendants intentionally targeted Utah residents because they "tracked Utahns' viewing preferences, made recommendations for their consumption, and provided them tailored content."[97] But under Tenth Circuit precedent, the intentional action must be "aimed at the forum *state*," not aimed at a particular person regardless of where they live.[98] Plaintiffs do not assert that Freesites' data collection and recommendation actions are specific to Utah such that it "target[ed] residents of the forum state to a degree greater than any other users."[99] Rather, anyone from any state that accesses Freesites' websites will receive tailored content that fits their viewing preferences. True, plaintiffs allege that part of the data Freesites collects includes users' IP addresses and geographic locations.[100] But for an action to be aimed at a forum state, it must do more than involve state residents. Rather, "the forum state itself must be

[95] *Shrader*, 633 F.3d at 1240–41.
[96] *See FITn40, LLC v. Glanbia Nutritionals (Ireland) Ltd.*, No. 2:20-cv-00871-JNP-DAO, 2022 WL 79919, at * 4 (D. Utah Jan. 7, 2022) (unpublished) ("the simple operation of a commercial website accessible to individuals in a particular state does not, on its own, support the exercise of specific personal jurisdiction."); *Dagen v. Book*, 249 F.R.D. 362, 366 (D. Colo. 2008) ("a passive website[] does not provide sufficient minimum contacts to support personal jurisdiction.").
[97] Opp'n 4.
[98] *XMission*, 105 F.4th at 1310 (emphasis added). *See also Service Experts, LLC v. Otte*, 609 F.Supp.3d 1183, 1188–89 (D. Kan. 2022) ("The analysis must focus on the defendant's contacts with the forum and not merely the defendant's contacts with persons who reside there.") (internal quotation marks omitted).
[99] *Zvelo, Inc. v. Check Point Software Techs., Ltd.*, 418 F.Supp.3d 664, 670 (D. Colo. 2019) (quoting *Boppy Co. v. Luvee Prods. Corp.*, No. 04-MSK-320, 2004 WL 2608265, at *4 (D. Colo. May 25, 2004) (unpublished) ("[T]he Court notes that many cases recognize that the 'purposeful' element is not satisfied by an interactive website that is generally available to persons nationwide (much less worldwide) but which does not specifically target residents of the forum state to a degree greater than any other users."). *Compare Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F.Supp.2d 1011, 1021 (D. Kan. 2006) ("The website makes no mention of Kansas or the parties' activities in Kansas, and it is not directed to users in Kansas any more than to users worldwide."), *with SelectHealth, Inc v. Risinger*, 18 F.Supp.3d 1268, 1274 (D. Utah 2014) ("The Court finds that Defendant purposely targeted residents of the forum state of Utah and not a general nationwide audience.").
[100] Am. Compl. ¶ 85.

the focal point of the tort."[101] If the former were sufficient to confer jurisdiction, then website providers could be haled into any jurisdiction in which a resident could access the website, "rendering the territorial limits of personal jurisdiction meaningless."[102] Plaintiffs do not explain how the exercise of personal jurisdiction on this basis comports with the case law.

**iv. Generating Revenue**

Plaintiffs allege that Freesites directed its activities at Utah because it "derived substantial revenue from their presence within this State."[103] Freesites "generates revenue from selling products to Utah consumers and ad space to Utah advertisers."[104] It is unclear what products Plaintiffs are referencing. Plaintiffs do not specifically allege that Freesites sells any physical products, and Freesites' unrebutted affidavit states that it does not sell any of its websites' content, an alleged product, through subscriptions to Utah residents.[105]

Whether selling advertising space to forum residents is an act aimed at Utah is a novel question for this court. Selling advertising space could be compared to selling physical products, which other courts have analyzed in the personal jurisdiction context. District courts in this Circuit have held that, in the trademark world, "selling products on interactive websites (including Amazon) is purposeful conduct that targets the states in which either the consumer or the products' trademark holder is based."[106]

---

[101] *Shrader*, 633 F.3d at 1244 (quoting *Dunikov*, 514 F.3d at 1074 n.9).
[102] *Id.* at 1240.
[103] Am. Compl. ¶ 32.
[104] MTD 4–5.
[105] *See supra* § II.A.2.i.
[106] *Nature's Sunshine Prods., Inc. v. SAAM Enter. Inc.*, No. 2:25-cv-00012-TC, 2025 WL 1170354, at *4 (Apr. 22, 2025) (unpublished). *See also PopSockets LLC v. Y.E.F. Trading Inc.*, No. 19-cv-03636-CMA-SKC, 2020 WL 6487418, at *2 (D. Colo. Nov. 4, 2020) (exercising personal jurisdiction where company with Amazon storefront sold "products bearing Plaintiff's trademarks to Colorado residents over the internet.").

However, even if selling advertising space similarly constituted an action specifically directed at Utah, Plaintiffs' injuries do not arise out of these contacts.[107] The Tenth Circuit has yet to articulate whether a but-for test or a proximate cause test governs this analysis.[108] But Plaintiffs have not even satisfied the less restrictive but-for test.[109] Nowhere do Plaintiffs contend that their injuries are due in part to Defendants selling advertising space to Utah residents. Plaintiffs allege injuries in the form of pornography addiction and mental and sexual health struggles.[110] These injuries allegedly stem from the design and age verification defects on Freesites' websites.[111] Plaintiffs do not allege that seeing advertisements on a Freesites' website contributed to this alleged harm, or that but-for the advertisements they would not have suffered injuries. The only advertising issue in this litigation is Freesites' own general advertising on social media.[112] Thus, the "arising out of" requirement is not satisfied as Plaintiffs "would have suffered the same injury even if none of the defendant's forum contacts had taken place."[113]

**v. Provision of Products/Services and Regular Business Activities**

Plaintiffs contend that Freesites further engaged with Utah residents through "provision of products and services, and have generally conducted regular business activities in Utah."[114] The court finds this allegation duplicative. Plaintiffs have not alleged that Freesites offered any products or services outside of subscriptions and free websites which have already been

---

[107] *Dudnikov*, 514 F.3d at 1071 ("plaintiff's injuries must 'arise out of' defendant's forum-related activities").
[108] *Newsome v. Gallacher*, 722 F.3d 1257, 1270 (10th Cir. 2013).
[109] Plaintiffs also have not demonstrated how injuries to Plaintiff S.A., who at all relevant times was a resident of Michigan, arise out of any Utah-based contacts. Am. Compl. ¶ 15.
[110] *Id.* ¶¶ 14, 15.
[111] *Id.* ¶¶ 10, 11.
[112] *Id.* ¶¶ 9, 93.
[113] *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1285 (10th Cir. 2020) (quoting *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456–57 (10th Cir. 1996)) (alterations adopted).
[114] Am. Compl. ¶ 32.

analyzed. Likewise, Plaintiffs plead no fact allegations about what further business Freesites conducted in Utah besides maintaining its websites and selling advertising space, which has also been previously discussed.

**vi. Removing Content and VPN Messaging**

Plaintiffs point out the Defendants "superficially removed access to adult content for Utah residents after Utah implemented age verification laws."[115] But if this was evidence of intentional contact it would "require[] the Court to draw a negative inference that Defendants' ability to restrict certain content from entering the forum must mean that whatever content ended up there did so intentionally."[116] "[I]f this could support or demonstrate purposeful direction, then a plaintiff would need only to allege that a defendant who operates a website could have, but failed to, eliminate traffic to a particular forum."[117] This would then subject website operators to jurisdiction in any state the website could be accessed, frustrating the purpose of personal jurisdiction to place geographic limits on a state's judicial power.[118]

Plaintiffs also contend that after Utah implemented its age verification laws, Utah residents accessing a Freesites' website would receive a message reading "your elected officials in Utah are requiring us to verify your age before allowing you access to our website" and "directed users in Utah to use VPNs to bypass geo blocks."[119] But Utah did not enact its age verification laws until 2023 and 2025.[120] Neither Plaintiff was a minor at the time these laws and

---

[115] Opp'n 5.
[116] *Q.R. by and through Doe v. ICF Tech., Inc.*, No. 6:25-cv-01093-HLT-BGS, 2026 WL 369041, at *4 (D. Kan. Feb. 10, 2026) (unpublished).
[117] *Id.*
[118] *Shrader*, 633 F.3d at 1240.
[119] Opp'n 5.
[120] Am. Compl. ¶ 124.

the resulting website messages took place. As such, Plaintiffs' injuries, which they allege resulted from viewing pornography as minors, cannot "arise from" this Utah-based action. For the same reason, Defendants' challenge of these Utah laws cannot serve as a basis for personal jurisdiction.

Thus, Plaintiffs have not sufficiently pled an action directed at Utah that resulted in Plaintiffs' injuries such that the court has personal jurisdiction over Defendant Freesites.[121]

### B. Other Defendants

Plaintiffs contend the remaining Defendants Aylo Global Entertainment, Inc., Aylo USA Inc., Aylo Holdings Corp., Aylo Holdings S.A.R.L., and 9219-1568 Quebec, Inc. are subject to this court's personal jurisdiction because they are alter-egos of Freesites operating as a single business enterprise.[122] An alter-ego analysis imputes one entity's contacts with the forum state to another.[123] Because Plaintiffs have not plausibly pled that Freesites has the requisite minimum contacts itself, this analysis cannot confer jurisdiction over any of its alleged alter-egos. And Plaintiffs do not plead sufficient facts as to those Defendants regarding any forum contacts of their own sufficient to confer jurisdiction. Thus, it has not been established that this court has jurisdiction over any of the Defendants, resulting in dismissal of the Amended Complaint. The court cannot discern whether amendment of the complaint would be futile. Therefore, the

[121] Plaintiffs cite to *FTC v. Aylo Group Ltd.*, No. 2:25-cv-00752-TS (D. Utah 2025) to argue that "[a]llegations almost identical to Plaintiffs' have satisfied the pleading requirements for personal jurisdiction." Opp'n 5. But the parties in that case stipulated to jurisdiction: "[o]nly for purposes of this action, Defendants agree not to contest Jurisdiction." *FTC*, No. 2:25-cv-00752-TS, Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief, ECF No. 6 ¶ 3. Thus, no jurisdictional analysis was conducted.

[122] Am. Compl. ¶ 24 ("all the Aylo entities operate as a single business enterprise, commingling their funds and other assets to shelter and avoid liabilities and to hide the identity of their owners, and are jointly and severally liable in this action as alter egos of one another.").

[123] *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1020 (10th Cir. 1990) ("When one defendant completely controls another, the latter's contacts with the forum may fairly be imputed or attributed to the former.").

dismissal is without prejudice. Because the Amended Complaint will be dismissed, the court finds that Defendants' Motion to Strike Class Allegations is now moot.

**ORDER**

Accordingly, Defendants' Motion to Dismiss is GRANTED without prejudice[124] and Defendants' Motion to Strike Class Allegations is DENIED as moot.[125]

Signed November 6, 2026.

BY THE COURT



David Barlow
United States District Judge

[124] ECF No. 45.
[125] ECF No. 44.